UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED

OCT 2 2 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES OF AMERICA, :
:
v. : Criminal No.  07 - 227 - 01 (ESH)
:
JANNAZZO DAMONE BOYD, :
Defendant. :

### GOVERNMENT'S PROFFER OF PROOF IN
### SUPPORT OF DEFENDANT'S PLEA OF GUILTY

The United States of America, by its attorney, the United States Attorney for the District of Columbia, respectfully submits the following Proffer of Proof in Support of a Proposed Plea of Guilty by the defendant to Count One of an Indictment in the above-captioned matter.

### *Elements of the Offense*

The essential elements of the offense of Conspiracy to Possess with Intent to Distribute and to Distribute one Kilogram or more of Phencyclidine and one Kilogram or more of Phencyclidine (PCP) in violation of 21 United States Code § 846 and 21 United States Code, §§ 841 (a)(1) and 841(b)(1)(A)(iv), 841(b)(1)(A)(I) and each of which the government must prove beyond a reasonable doubt to sustain a conviction, are:

(1) that an agreement existed between two or more persons to commit the crimes of distribution and possession with intent to distribute a controlled substance, that is, phencyclidine;

(2) that the defendant intentionally joined in that illegal agreement.

The law makes phencyclidine controlled substance. *See United States v. Lam Kwong Wah*, 924 F.2d 298, 302-303 (D.C. Cir. 1991); *United States v. Pumphrey*, 831 F.2d 307, 308-309, 265 U.S. App.

D.C. 306, 307-308 (D.C. Cir. 1987). These cases hold that the offense of violating 21 U.S.C. § 846, by conspiring to violate federal narcotics laws, does not include an element of commission of an overt act in furtherance of the conspiracy.

Count One of the Indictment, which applies to this defendant, charges that defendant conspired to distribute and possess with intent to distribute more than one kilogram of a mixture and substance containing a detectable amount of phencyclidine. The essential elements of the offense of distribution of a controlled substance are:

(1) That the defendant distributed a controlled substance, that is, phencyclidine. Distribute means to transfer or attempt to transfer to another person. The government need not prove that the defendant received or expected to receive anything of value in return.

(2) That the defendant distributed the controlled substance, that is, phencyclidine, knowingly and intentionally. This means consciously, voluntarily and on purpose, not mistakenly, accidentally or inadvertently.

The essential elements of the offense of possession with intent to distribute phencyclidine are:

(1) That the defendant possessed a controlled substance, that is, phencyclidine;

(2) That the defendant did so knowingly and intentionally. This means consciously, voluntarily and on purpose, not mistakenly, accidentally or inadvertently.

(3) That when the defendant possessed the controlled substance, that is, phencyclidine, he had the specific intent to distribute it. Distribute means to transfer or attempt to transfer to another person.

Count One of the Indictment charges that Jannazzo Damone Boyd conspired to distribute and possess with intent to distribute more than one kilogram of a mixture and substance containing a

detectable amount of phencyclidine. Thus, in order to make the defendant liable for the sentencing enhancements set out in 21 U.S.C. § 841(b)(1)(A)(iv), the United States would be required to prove beyond a reasonable doubt that the defendant and others conspired to distribute and possess with intent to distribute one kilogram or more of a mixture and substance containing a detectable amount of phencyclidine during the life of the conspiracy, as charged in the Indictment -- that is, between August 1, 2005, and June 11, 2007, *Apprendi v. New Jersey,* 530 U.S. 466 (2000).

### *Penalties for the Offense*

The penalty for conspiring to commit a narcotics offense, in violation of 21 U.S.C. § 846, is the same as that prescribed for the substantive offense, "the commission of which was the object of the . . . conspiracy." In this case, the penalty is the same as for a violation of 21 U.S.C. § 841(a)(1), as set forth in 21 U.S.C. § 841(b)(1)(A)(iv), distribution or possession with intent to distribute phencyclidine ~~and heroin~~. The maximum penalty, therefore, is:

(A) a term of imprisonment which may not be less than 10 years nor more life;

(B) a fine not to exceed $4,000,000;

(C) a term of supervised release of at least 5 years, after any period of incarceration;

(D) a special assessment of $100.

The United States Sentencing Guideline § 5E1.2 permits the Court to impose an additional fine to pay the costs of for imprisonment and any term of supervised release and/or probation.

### *Factual Proffer*

The following proffer of the government's evidence is intended only to provide the Court with enough evidence to satisfy the mandate of Rule 11(b)(3) of the Federal Rules of Criminal Procedure. This proffer is not intended to be a disclosure of all the evidence available to the United

States nor, to the extent it makes representations concerning anything defendant said, is it a recitation of all that defendant said.

Had this matter gone to trial, the government's evidence would have shown, beyond a reasonable doubt, the following:

1. In the fall of 2005, law enforcement developed information that Anthony Maurice Suggs was distributing large quantities of Phencyclidine ("PCP") in the Washington, D.C. area. Law enforcement officers collected substantial evidence that Suggs was actively distributing gallons of PCP and cocaine. After obtaining credible evidence of Suggs' drug trafficking, the government prepared an affidavit in support of wire interceptions over the cellular telephone used by Suggs, and on January 8, 2007, the Honorable Rosemary M. Collyer, United States District Court Judge for the District of Columbia, found probable cause for the interceptions of Suggs' telephone, and approved the interceptions. Interceptions commenced on January 9, 2007. Within two weeks of intercepting Suggs' telephone, law enforcement officers determined that Suggs' supplier of PCP was Lonnell George Glover. The government prepared an affidavit in support of wire interceptions over the cellular telephone used by Glover, and on February 9, 2007, Judge Collyer found probable cause for interceptions over Glover's telephone, and approved the interceptions. Shortly thereafter, when probable cause was developed to show that Glover used his pickup truck in transporting drugs and as a meeting place for drug trafficking, the government prepared an affidavit in support of an application for authority to intercept oral communications in and within the vicinity of Glover's pickup truck. On March 19, 2007, Judge Collyer found probable cause for interceptions in and in the vicinity of Glover's pickup truck, and approved the interception of oral communications. A summary of some of those interceptions follows.

2.  Glover's relationship with Suggs centered around the PCP that Glover supplied to Suggs and this was evident in the interceptions over Suggs' cellular telephone. However, in monitoring Glover's cellular telephone and later in monitoring conversations inside Glover's pick up truck, it became clear that Glover was a source of supply for both PCP and heroin.[1] Glover supplied PCP to the defendant. In February of 2007, shortly after law enforcement began intercepting communications over Glover's cellular telephone, they intercepted calls between Glover and the defendant. The defendant and Glover were intercepted together in conversations regarding drug trafficking inside Glover's pick up truck as well.

3.  On April 10, 2007, at 9:04 a.m., Glover received a call on his monitored cellular telephone from the defendant and the call was intercepted. Glover advised that he would be in Northeast, Washington, D.C., around 9:30 a.m., and offered to meet the defendant at that time. At 9:37 a.m., Glover received a call on his monitored cellular telephone from the defendant and the call was intercepted.[2] The defendant advised that he was by the Checkers on Maryland Avenue and Glover advised that he would be there shortly. The FBI conducted surveillance in the area of 14th Street and Maryland Avenue, Northeast, Washington, D.C. and at 9:45 a.m., Glover was observed with the defendant walking toward Glover's Chevrolet pick-up truck which was parked in the 700 block of 14th Street, Northeast, Washington, D.C. When the meeting ended the defendant got into

---

[1] While conversations over the cellular telephones monitored in this case display the usual aversion of drug traffickers to directly discuss the narcotics they traffic and the same use of clumsy codes, conversations inside Glover's pick up truck were open and outrageous because the conspirators did not believe they were subject to interception there.

[2] Unless otherwise stated the defendant utilized cellular telephone number (202) 904-4356 to speak to Glover. This is a prepaid cellular telephone and there is no subscriber information available.

a Toyota Camry bearing DC tag CU-3175 and left the area. The Toyota Camry was registered to Jannazzo Boyd, the defendant.

4. On May 22, 2007, there were a series of calls between Glover and the defendant in which they discussed meeting. However, they never agreed on a definite time or place. At 11:36 p.m., that same day, Glover used his monitored cellular telephone to call (202) 248-8803, but the call was answered by voice mail. On May 17, 2007 an Administrative Subpoena was sent to Nuestar seeking subscriber information for telephone number (202) 248-8803. On May 21, 2007, Nuestar responded to the Administrative Subpoena and advised that the telephone bearing the number (202) 248-8803 is land line subscribed to Mishana Morton, and located at and billed to Mishana Morton at 3331 22nd Street, Apartment G, Southeast, Washington, D.C. On May 22, 2007, at 9:45 p.m., based on the subscriber information and the prospect of Glover meeting with the defendant, surveillance was established in the area of 3331 22nd Street, Southeast, Washington, D.C. At 10:47 p.m., the defendant's Toyota Camry was observed parked in front of 3331 22nd Street, Southeast, Washington, D.C.

5. On May 23, 2007, at 9:52 a.m., Glover received a call on his monitored cellular telephone from the defendant, and the call was intercepted. At the beginning of the conversation Glover indicated he had called the defendant on the "house phone" the previous night around 11:30 p.m. The defendant explained that he had probably been asleep. Glover and the defendant had a conversation about Mr. Boyd's unsuccessful attempt to pass the CDL exam. Mr. Boyd then said "Man yesterday I was sitting in front of the um Bank of America, hot as a motherfucker, thirsty as hell." Glover asked Mr. Boyd to give him until 11:00 a.m., and said he would come to the defendant's location. The evidence in this matter would show that when the defendant told Glover

yesterday he had been sitting in front of the "Bank of America . . . thirsty as hell," he was informing Glover that he had money and wanted to purchase PCP.

6.      On June 6, 2007, at 3:02 p.m., Glover received a call on his monitored cellular telephone from the defendant and the call was intercepted. The defendant asked "What you up to?" Glover indicated he was around today and he advised that he was currently in Landover, Maryland. The defendant then said "Well I'm just gonna go in the house and then you, you know, you come on this side, I'm trying to holler at you." Glover agreed and the call ended. At 7:02 p.m., Glover received a call on his monitored cellular telephone from the defendant who was using telephone number (202) 248-8803 and the call was intercepted. Glover asked the defendant to give him until 8:00 p.m. At 9:24 p.m., Glover received a call on his monitored cellular telephone from the defendant and the call was intercepted. Glover advised that he was just getting ready to call the defendant and asked for his location. The defendant responded "I'm like uh fifteen minutes away from my house." Glover then said "Okay, alright, okay I'll come out that way then." At 10:53 p.m., Glover used his monitored cellular telephone to call the defendant and the call was intercepted. Glover stated "I'm out front" and the call ended.

7.      On June 16, 2007, at approximately 4:23 p.m., the defendant was intercepted in a conversation with Glover inside Glover's pick up truck. Glover was on his cellular telephone as the defendant entered the truck and shortly after the defendant entered the truck Glover asked what is this here. Defendant said it was "12" and Glover responded "You gave me three,". . . so this [the 12] means you [the defendant] owes him nothing." Glover said that he only had "a gallon left," and that he would give the defendant his other half. The defendant said that by the next day he should have 35 and he has a new customer who needs to "hit" him every day. Glover said that this stuff is

different than the other, that it is good and it does not have "that oil in it." The defendant said he was about to put the stuff up in soda bottles. The evidence in this matter would show that when defendant entered the truck he gave Glover a quantity of money and the first part of their conversation was a discussion of the state of defendant's drug debt with Glover. The evidence would further show that Glover then told defendant he had a gallon of PCP left and would sell defendant a half gallon. Defendant discussed a new customer he has for the PCP and said the customer buys from him on a daily basis. Defendant then indicated that he was about to package his remaining PCP for sale in soda bottles.

8. On June 19, 2007, Glover and 20 other co-conspirators were arrested on the Indictments returned by a grand jury of this court on June 12, 2007.

9. On June 21, 2007, pursuant to a search warrant authorized by Magistrate Judge Facciola of this Court, agents of the FBI searched the defendant's residence at 3331 22nd Street, Apartment G, Southeast, Washington, D.C. Recovered during the search were personal papers found in a wallet in defendant's sweat pants pocket including a District of Columbia CDL (commercial driving license, see ¶ 5, *supra*) learners permit, a District of Columbia drivers license, and miscellaneous documents all in the name of Jannazzo Boyd. Agents also recovered numerous bottles containing approximately one half gallon of liquid PCP, a quantity of marijuana which is a known to be a delivery agent for PCP, numerous plastic bags used to package PCP for sale when it is sprayed on marijuana, and numerous documents in defendant's name. When the agents entered the premises at 3331 22nd Street, the defendant was located inside a bedroom in the premises. No one else was present in the premises.

10. Were this matter to go to trial, the government would present competent evidence that all of the drugs seized in this case were transported to laboratories of the Drug Enforcement Administration, where they were subjected to quantitative and qualitative analysis by a qualified forensic chemist. The chemist would have testified that all of the seized materials were controlled substances as described herein.

Respectfully submitted,

JEFFREY A. TAYLOR
UNITED STATES ATTORNEY

BY: *William J. O'Malley, Jr.*
WILLIAM J. O'MALLEY, JR.
Assistant United States Attorney

*Anthony Scarpelli*
ANTHONY SCARPELLI
Assistant United States Attorney

*John K. Han*
JOHN HAN
Assistant United States Attorney

## Defendant's Acceptance

I have read the ten (10) pages which constitute the government's Proffer of Proof and have discussed it with my attorney, A.J. Kramer, Esquire. I fully understand this proffer. I agree that these pages accurately and completely set forth the government's proof as I understand it. It is accurate as to any facts which pertain to me and I have no information about any facts that do not pertain to me. I do this voluntarily and of my own free will, intending to be legally bound. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this agreement fully.

I reaffirm that absolutely no promises, agreements, understandings, or conditions have been made or entered into in connection with my decision to plead guilty except those set forth in my plea agreement.

I am satisfied with the legal services provided by my attorney in connection with this proffer and my plea agreement and matters related to it.

Date: 10-22-07

JANNAZZO DAMONE BOYD
Defendant

## Attorney's Acknowledgment

I have read each of the ten (10) pages which constitute the government's Proffer of Proof, reviewed them with my client, and discussed the provisions of the proffer with him, fully. These pages accurately and completely set forth the government's proof as I understand it.

Date: 10.22.07

A.J. KRAMER, Chief
Federal Public Defenders Office
Attorney for the Defendant

10